UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal No. 16-cr-23 |
| V. | |
| ANIS CHALHOUB, M.D., | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Government's Second Motion for Disqualification. [R. 45.] This Court previously disqualified Mr. Wicker of Dressman Benzinger Lavelle PSC from representing Dr. Chalhoub. [R. 39.] The Government now moves to disqualify Ms. Nicole Elver and the entire firm of Dressman Benzinger LaVelle PSC (DBL) from representing Dr. Chalhoub. For the reasons stated below and because Ms. Elver implemented an effective and timely screen, she and DBL are not disqualified from representing Dr. Chalhoub and the Government's Motion to Disqualify is **DENIED**. [R. 45.]

**I**

This Second Motion for Disqualification of Nicole Elver and the entire firm of DBL stems from the same factual basis as the original Motion to Disqualify Kent Wicker. The facts from that opinion are incorporated by reference here. [*See* R. 39.]

Mr. Wicker was approached in mid-April 2017 to represent Dr. Chalhoub. [R. 30 at 4.] Mr. Wicker and Ms. Nicole Elver entered their appearance on the matter on May 1, 2017. [R. 23.] Raising issues that Mr. Wicker had previously represented CHI/SJHS, Dr. Chalhoub's

former employer, the Government orally moved to disqualify Mr. Wicker from representing Dr. Chalhoub on May 26, 2017 during a teleconference. [R. 29.]

The details of Mr. Wicker's disqualification are detailed in this Court's prior Memorandum Opinion & Order. [R. 39.] Mr. Reinberg, counsel for SJHS, who submitted an affidavit petitioning the Court to disqualify Mr. Wicker indicated that Mr. Wicker was retained as legal counsel for CHI/SJHS "until at least May 23, 2013." [R. 29-1 at 7.] In contrast, Ms. Elver has never been counsel to CHI nor SJHS. In fact, she did not join DBL until April 1, 2014, after Mr. Wicker's representation ended. [R. 48-1 at 1.] Ms. Elver attests that she was not aware that Mr. Wicker had represented CHI/SJHS until the issue "arose in the context of the representation of Dr. Chalhoub." [*Id*. at 2.] The only communication Ms. Elver has had with CHI/SJHS counsel occured on June 15, 2017. Then, Ms. Elver sent notice to Mr. Reinberg that she was entering an appearance on behalf of Dr. Chalhoub. [*Id*.] Ms. Elver states that, "Mr. Wicker did not share any confidential or attorney client communications relating to CHI/SJHS with [her] while [she] was representing Dr. Chalhoub." [*Id*.]

This Court entered a Memorandum Opinion and Order on June 13, 2017, holding that Mr. Wicker is disqualified from representing the Defendant pursuant to the Kentucky Supreme Court Rule 1.9. [R. 39.] Defendant filed a Motion for Reconsideration on June 22, 2017. [R. 44.] That Motion for Reconsideration was denied. [R. 51.]

Upon the Court's opinion disqualifying Mr. Wicker, Ms. Elver, at the request of Dr. Chalhoub, continued her representation by instituting a screen and alerting counsel for CHI/SJHS. [R. 48-1 at 3.] Ms. Elver directed the IT department to "restrict Mr. Wicker's access to the electronic case file" and to delete any files on his personal drive that were associated with Dr. Chalhoub's case. [*Id*.] She directed her assistants to remove paper files from Mr. Wicker's

office and lock them in a file cabinet. [*Id*.] She sent an email to DBL's Louisville office informing them of the screen and ordering them to direct communications regarding the case to her. [*Id*.] Ms. Elver ensured that Mr. Wicker's access to future electronic documents is restricted and created a new billing number under her name so that Mr. Wicker can no longer access the billing records for the case against Dr. Chalhoub. [*Id*.] Finally, Ms. Elver emailed counsel for CHI/SJHS, Mr. Reinberg, and alerted him to her representation of Dr. Chalhoub. [*Id*. at 4.]

Between May 26, 2017, and June 13, 2017, Mr. Wicker was not screened from this case and, presumably, continued working on his representation of the Defendant with Ms. Elver during that time. After learning that Ms. Elver intended to stay on the case, the Government moved to disqualify Ms. Elver and the entire DBL firm. [R. 39.]

## II

"The Sixth Amendment right to assistance of counsel is a fundamental right so essential to a fair trial that it is part of the Due Process Clause of the Fourteenth Amendment and thus applicable to the states." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Gideon v. Wainwright,* 372 U.S. 335, 344 (1963)). However, the Sixth Amendment does not provide a right to a *specific* attorney and this Court has "an independent interest in ensuring that criminal trials are conducted within [relevant] ethical standards." *Serra*, 4 F.3d at 1353 (6th Cir. 1993); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006). The Supreme Court has affirmed that trial courts "must be allowed substantial latitude to evaluate in the light of their informed judgment the facts and circumstances of each case, including any attempt by the Government to 'manufacture' a conflict to prevent a defendant from obtaining

particularly able counsel." *Wheat v. United States*, 486 U.S. 153, 153 (1988); *see also Gonzalez-Lopez*, 548 U.S. at 152.

When evaluating claims for disqualification, the court should place a presumption in favor of Defendant's counsel of choice, but "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict," even if the Defendant wishes to waive the conflict. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000); *see also United States v. Matsa*, 540 F.Appx. 520, 523 (6th Cir. 2013), *Wheat*, 486 U.S. at 153. Even where a party waives a potential conflict of interest, this "does not bind the courts." *Hall*, 200 F.3d at 965. When a motion for disqualification comes before the Court, the Court must be mindful of the ability of parties to use this as a "potent weapon;" and should carefully balance "competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988); *see also Serra*, 4 F.3d at 1352 (6th Cir. 1993).

Both parties agree that Rule 1.10(d) of the Kentucky Rules of Professional Conduct govern in this case of imputed conflict, which holds:

> (d) A firm is not disqualified from representation of a client if the only basis for disqualification is representation of a former client by a lawyer presently associated with the firm, sufficient to cause that lawyer to be disqualified pursuant to Rule 1.9 and:
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and
> (2) written notice is given to the former client.

Ky. Sup. Ct. R. 3.130(1.10). Ky. Sup. Ct. R. 3.130(1.9) cmt. 7 indicates the "minimum requirements for screening" can be found at Ky. Sup. Ct. R. 3.130(1.0)(k) and Ky. Sup. Ct. R. 3.130(1.0)(k) cmt. 8-10. According to Ky. Sup. Ct. R. 3.130(1.0)(k), a screened attorney "denotes the isolation of a lawyer from any participation in a matter through the timely

imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." Relevant here, Ky. Sup. Ct. R. 3.130(1.0)(k) cmts. 9-10 read:

> (9) . . . The personally disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter. Additional screening measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other materials relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened lawyer relating to the matter, denial of access by the screened lawyer to firm files or other materials relating to the matter and periodic reminders of the screen to the screened lawyer and all other firm personnel.
> (10) In order to be effective, screening measures must be implemented as soon as practical after a lawyer or law firm knows or reasonably should know that there is a need for screening.

"[A] lawyer's conflicts are ordinarily imputed to his or her firm based on the presumption that associated attorneys share client confidences." *United States v. Kilpatrick*, 798 F.3d 365, 375 (6th Cir.). However, this presumption can be rebutted by proper screening procedures. In *Manning*, 849 F.2d at 225, the Sixth Circuit outlined a non-exhaustive list of factors the Court may consider when determining whether or not a presumption of shared confidences has been adequately rebutted.

The Court has latitude to decide whether an attorney should be disqualified based on imputed conflict on "a case-by-case basis." *Manning*, 849 F.2d at 225. The Court may consider, but is not limited to considering, "the size and structural divisions of the law firm involved, the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation, the existence of rules which prevent the 'infected' attorney from

access to relevant files or other information pertaining to the present litigation, or which prevent him from sharing in the fees derived from such litigation." *Id*.

This Court finds that Ms. Elver has provided adequate evidence to shift the presumption of shared confidences. Of the two elements of a proper screen found in Ky. Sup. Ct. R. 3.130(1.10), the Defense has provided adequate "written notice . . . to the former client," that Ms. Elver and DBL intend to continue in their representation of Dr. Chalhoub. Ky. Sup. Ct. R. 3.130(1.10). [*See* R. 48-1 at 3.] So the sole issue for this Court to consider is whether Mr. Wicker was adequately "screened from any participation in the matter and . . . apportioned no specific part of the fee therefrom." Ky. Sup. Ct. R. 3.130(1.10).

Ms. Elver implemented an appropriate screen. Setting up a new billing number, directing other attorneys to not speak to Mr. Wicker concerning the case, and restricting Mr. Wicker's access to the physical and digital files associated with this case is entirely adequate and meets the standard as outlined in Ky. Sup. Ct. R. 3.130(1.0)(k) and Ky. Sup. Ct. R. 3.130(1.0)(k) cmt 9.

The screen was also timely. Ky. Sup. Ct. R. 3.130(1.0)(k) cmt. 10, requires that for a screen to be effective, "screening measures must be implemented as soon as practical after a lawyer or law firm knows or reasonably should know that there is a need for screening." *See also* Ky. Sup. Ct. R. 3.130(1.0)(k) (the screen should be "timely). Ms. Elver implemented screening procedures as soon as she learned that Mr. Wicker was disqualified from representing Dr. Chalhoub, meeting the standard set forth here. [R. 48-1 at 3.]

This case is distinguishable from *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 225–26 (6th Cir. 1988) and *LaSalle Nat. Bank v. Lake Cty.*, 703 F.2d 252, 259 (7th Cir. 1983). In this matter, the Court is able to rely on the affidavits of Mr. Wicker and Ms. Elver. In its opinion disqualifying Mr. Wicker, the Court concluded he did not remember any confidential

information related to his representation of CHI/SJHS. [*See* R. 30-5.] It was the *prospect* of Mr. Wicker remembering a piece of confidential information during the course of trial that lead to a conflict in his representation. Since Mr. Wicker could not recall any privileged information, it is reasonable to conclude that he did not pass on any confidential information on to Ms. Elver.

This Court also relies on the affidavit submitted by Ms. Elver, who has sworn that, "Mr. Wicker did not discuss anything about his representation of CHI/SJH with [her], except to mention generally that there was a prior investigation of Dr. Patil relating to his use of stents. Mr. Wicker did not share any confidential or attorney client communications relating to CHI/SJHS with [her]." [R. 48-1 at 2.] This Court values the integrity of lawyers admitted to its Bar. The attorneys in this case have given this Court no reason to question their reasoned judgment and sworn affidavits. Since both Mr. Wicker and Ms. Elver have sworn to not sharing confidences, this Court will not infer a contrary finding absent additional evidence.

Finally, this Court is mindful of the procedural implications when counsel seeks disqualification. Though this Court does not doubt the Government's intentions, with a small bar, the potential to create conflicts with Defendants' choice of counsel weighs large. There are a limited number of attorneys in this District capable of handling such complex healthcare fraud cases and, as in any legal market, these attorneys move around to different law firms. This Court is mindful of the undue burden that could be placed on the Defendant to obtain counsel of his choice absent careful consideration of disqualification motions.

## III

This Court is afforded "substantial latitude to evaluate in the light of their informed judgment the facts and circumstances of each case." *Wheat v. United States*, 486 U.S. 153, 153 (1988). After considering the motion from the Government and the Defendant's response, this

Court holds that Ms. Elver and DBL are not disqualified from representing Dr. Chalhoub in the above captioned matter. Accordingly, it is hereby **ORDERED**:

1. The Government's Motion for Disqualification [R. 45] is **DENIED**; and

2. Parties will submit to a telephonic conference with the Court on **Thursday, October 19, 2017, at 1:30 p.m.** To join the teleconference, the parties are directed to call AT&T Teleconferencing at 1-877-336-1280 and enter Access Code 2086161 (followed by #), and, when requested, enter the Security Code 09170 (followed by #).

This the 13th day of October, 2017.

Gregory F. Van Tatenhove
United States District Judge