UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 16-cr-23 |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANIS CHALHOUB, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

A federal criminal defendant in the United States is generally charged by way of an indictment returned in open court by a grand jury.  An indictment gives a defendant notice of the crimes charged against him so that he can adequately prepare a defense.  Federal Rule of Criminal Procedure 12(b) allows for the dismissal of an indictment prior to trial if the charging document suffers from certain defects.  The Defendant, Anis Chalhoub, seeks relief from the Court under this Rule.  Chalhoub has moved the Court for dismissal of the Indictment returned against him on the ground that the Indictment—which charges Chalhoub with healthcare fraud—fails to actually allege a violation of law.  [*See* R. 56.]  Because the Indictment complies with the requirements of the United States Constitution, however, the Defendant's Motion to Dismiss [R. 56] will be **DENIED**.

**I**

In June 2016, a Federal Grand Jury returned an Indictment against Anis Chalhoub, M.D. [R. 1.]  Chalhoub was charged with one count of health care fraud according to 18 U.S.C. § 1347.  [*Id.*]  The Government alleges that, from March 2007 through July 13, 2011, Chalhoub "implanted single chamber and dual chamber permanent pacemakers in patients without

sufficient medical need or justification" and "caused claims for medically unnecessary procedures and services to be submitted to healthcare benefit programs." [*Id.* at 3.] Chalhoub allegedly "knowingly and willfully" executed this scheme in order to defraud "Medicaid and other government health care benefit programs and private insurers." [*Id.* at 4.]

## II

### A

Federal grand jury indictments have a purpose. As the Supreme Court explained in *Russell v. United States*, our use of the indictment today is rooted in the guarantees set forth in the Fifth and Sixth Amendments to the United States Constitution. *See* 369 U.S. 749, 760-61 (1962). The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. CONST. amend. V. And according to the Sixth Amendment, "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. CONST. amend. VI. Out of this constitutional framework comes two criteria for federal indictments: First, an indictment must set forth the elements of the offense charged, thereby giving notice to a defendant of the accusations he must face. Second, an indictment must be sufficiently specific so that a defendant may plead double jeopardy, if charged in a subsequent proceeding with the same crime based on the same facts. *See Russell*, 369 U.S. at 763-64; *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). With these requirements in mind, the Court considers whether the Indictment returned against Dr. Akande passes constitutional muster.

Chalhoub's main challenge to the indictment is that medical necessity is a matter of opinion, not fact, and cannot therefore be the basis of a fraud claim. [*See* R. 56-1 at 1.] Further,

2

he states that the healthcare fraud statute, Section 1347, is itself unconstitutionally vague and, thus, violates Due Process. [*Id.* at 2.] These two separate arguments will be addressed in turn.

### A

The first Constitutional requirement is satisfied because the Indictment adequately informs Chalhoub of the criminal charges brought against him.[1] *See Russell*, 369 U.S. at 763. The Indictment specifically states Chalhoub committed health care fraud and also the precise way the Government alleges that he did it within a reasonable date range: from March 2007 through July 13, 2011, Chalhoub "implanted single chamber and dual chamber permanent pacemakers in patients without sufficient medical need or justification" and "caused claims for medically unnecessary procedures and services to be submitted to healthcare benefit programs." [R. 1-1 at 3.] He did this in order to defraud "Medicaid and other government health care benefit programs and private insurers." [*Id.* at 4.] The Indictment clearly and adequately informs

---

[1] Dr. Chalhoub is charged with violating Title 18, United States Code, § 1347, or committing health care fraud. Section 1347, reads in relevant part:

> **(a)** Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
> **(1)** to defraud any health care benefit program; or
> **(2)** to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.
> **(b)** With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

18 U.S.C.A. § 1347 (West).

Chalhoub of the crimes with which he is charged, such that he and counsel can prepare a defense to the Government's allegations.

Further, the Indictment satisfies the second constitutional requirement, as it is sufficiently specific to allow Akande to plead double jeopardy in a proceeding going forward. *Russell*, 369 U.S. at 764. The Indictment sets forth the dates of the health care fraud and where the crime occurred, in Laurel County, Kentucky. [R. 1-1 at 5.] Based on this charging document, Chalhoub should have be able to raise a double jeopardy defense should he be charged with a similar crime at any future point in time.

Chalhoub relies heavily on *United States v. Paulus*, No. CR 15-15-DLB-EBA, 2017 WL 908409, at *1 (E.D. Ky. Mar. 7, 2017), and several other cases outside this circuit. As the Defendant already acknowledged, the Court did not follow *Paulus* in *United States v. Bertram*, No. 3:15-cr-14-GFVT-REW (E.D. Ky. Sept. 29, 2017), but Chalhoub continues to argue that *Paulus* prevents a criminal prosecution where: "(a) there are no objective misstatements of fact made about the patient's condition or the services provided, and (b) qualified experts disagree on whether the procedure was medically necessary." [R. 47-1 at 6.] However, as this Court has held before and as *Paulus* also held, these are questions of fact for the jury.

In *Paulus*, the jury found a cardiologist guilty of health care fraud for billing for unnecessary cardiac procedures. Following a lengthy trial, the district court judge determined there was insufficient evidence to sustain the verdict and granted the defendant's Rule 29 motion. Recognizing that the Sixth Circuit has deemed it "fundamental that a false statement is a factual assertion," the *Paulus* court found that the Government failed to prove Dr. Paulus made any false statements worthy of the jury's fraud conviction. *See* 2017 WL 908409 at *5. Specifically, the *Paulus* court considered whether the degree of stenosis present in Dr. Paulus's patients—a

4

measurement used to justify the allegedly unnecessary cardiac procedures he performed—was "an *objective fact*, which can be false, or a *subjective opinion*, which is not subject to proof or disproof." *Id.* at *6 (emphasis in original). Considering this, the court went on to conclude the Government had failed to prove beyond a reasonable doubt that Dr. Paulus "knowingly and willfully exaggerated the extent of his patients' stenosis in their medical records, for the purpose of defrauding a health care benefit program." *Id.* The trial evidence showed that estimating the degree of stenosis is a very imprecise exercise for health care providers, and expert witnesses varied significantly in their observations and assessments of the appropriate treatment under the circumstances. *Id.* at *7-*9. Accordingly, the court concluded that the expert testimony and angiogram evidence did not permit a rational jury to convict Dr. Paulus of making a false statement, and the court further determined the other circumstantial evidence introduced at trial was, alone, insufficient to sustain the conviction. *Id.* at *9-*16.  As *Paulus* notes, "the statutes targeting health care fraud do not criminalize subjective medical opinions where there is room for disagreement between doctors. Instead, criminal liability only attaches . . . if the Government proved, beyond a reasonable doubt, that [the Defendant] knowingly and willfully exaggerated the extent of his patients' stenosis in their medical records, for the purpose of defrauding a health care benefit program."

   That is the crux of the issue in this case that the Court cannot yet determine.  This Court does not need to comment on the various medical literature presented by both parties because it is irrelevant to this determination.  [*See* R. 56-1 at 9; R. 59-13.]  Contrary to Defendant's assertions, *Paulus* did not find that fraud cannot exist under 18 U.S.C. § 1347, but only that it didn't exist in the specific set of facts before that court. [*See* R. 56 at 1.]  The jury will determine whether or not Dr. Chalhoub knew the applicable standards and knowingly and willfully

5

disregarded those standards to implant pacemakers that were not necessary. His intent is what matters.

The indictment here is sufficient to put Dr. Chalhoub on notice of the charges which he must defend against. Should the evidence prove Dr. Chalhoub did not have the requisite mens rea, the jury will return an appropriate verdict. The Indictment in this case has served its purpose and consequently is not fatally defective.

**B**

Next, the Defendant argues that the healthcare fraud statute, Section 1347, is itself unconstitutionally vague and, thus, violates Due Process. [R. 56-1 at 2.] "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). The statute is analyzed as applied to the "particular facts at issue," and not whether the statute is vague as applied to a hypothetical situation or the situation of others. *Id.*

Dr. Chalhoub states that "'medically unnecessary' treatment is too vague to support criminal liability when applied to the exercise of medical judgment." [R. 56-1 at 15.] He alleges two specific ways due process is violated:

> (1) physicians of ordinary intelligence are not provided fair notice of the criteria for determining when their choice of medical treatment for their patients falls so far outside acceptable criteria that it is criminal and fraudulent to seek reimbursement for such treatment; and (2) the government's attempt to criminalize departures from private, voluntary guidelines is so standardless that it permits seriously discriminatory enforcement.
>
> [R. 56-1 at 15.]

Section 1347 passes Constitutional muster and does not violate due process. A person of ordinary intelligence can understand that criminal charges may be brought if they "knowingly

6

and willfully execute[], or attempt[] to execute, a scheme or artifice-- . . . to defraud any health care benefit program." 18 U.S.C.A. § 1347 (West); *see Humanitarian Law Project*, 561 U.S. at 18. Though there are countless precise ways doctors might violate this statute, a doctor can understand they may be charged under this statute if that if they knowingly and willfully a plan to defraud insurance providers to obtain benefits that they are not entitled to have.

Likewise, the Defendant's argument that this statute is standardless is without merit. It is unreasonable that the Government should lay out precise guidelines for each type of health care fraud and how it might be committed, as no statute could encompass every type of criminal activity that might occur. But, without considering the medical literature at all, Dr. Chalhoub, as a cardiologist, has some sort of internal or external guide that he uses to assess when a patient needs a pacemaker. The criminal act allegedly occurred when Dr. Chalhoub billed for a procedure that *he knew* was not necessary. The jury is best suited to determine whether clear guidelines existed, whether Dr. Chlahoub knew of those guidelines, and whether he purposefully disregarded them in order to defraud various insurance providers.

In *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 204 (6th Cir. 1997), the Sixth Circuit held that a certain bill restricting abortion was unconstitutional. "[T]he Sixth Circuit emphasized that 'the lack of scienter' requirement was the significant Constitutional violation of this particular abortion bill. *Id.* The scienter requirement "requires that a defendant have some degree of guilty knowledge or culpability in order to be found criminally liable for some conduct." *Id.* at 203. Section 1347 has that scienter requirement and this scienter requirement will guide the jury as they decide whether Dr. Chalhoub knowingly and willfully committed health care fraud by implanting pacemakers that he knew he should not have implanted ("[w]hoever **knowingly and willfully** . . . 18 U.S.C.A. § 1347 (West)).

7

Section 1347 survives a due process evaluation because it adequately informs a "person of ordinary intelligence . . . of what is prohibited" and it is not "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Humanitarian Law Project*, 561 U.S. at 18. Dr. Chalhoub was adequately informed that if he were to implant pacemakers that he knew were not necessary, he could be prosecuted under this statute. Accordingly, there is no due process violation.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Defendant's Rule 12(b) Motion to Dismiss the Indictment [R. 56] is **DENIED**.

This the 16th day of February, 2017.

Gregory F. Van Tatenhove
United States District Judge