UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> V. <br><br> ANIS CHALHOUB, M.D., <br><br> Defendant. | Criminal No. 6:16-cr-00023-GFVT-HAI <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a number of Motions in Limine brought by both parties. [R. 98; R. 99; R. 100; R. 107.] As explained further, and for various reasons, the motions will be **DENIED** and **GRANTED** as set forth below.

**I**

In June 2016, a Federal Grand Jury returned an Indictment against Anis Chalhoub, M.D. [R. 1.] Chalhoub was charged with one count of health care fraud according to 18 U.S.C. § 1347. [Id.] The Government alleges that, from March 2007 through July 13, 2011, Chalhoub "implanted single chamber and dual chamber permanent pacemakers in patients without sufficient medical need or justification" and "caused claims for medically unnecessary procedures and services to be submitted to healthcare benefit programs." [Id. at 3.] Chalhoub allegedly "knowingly and willfully" executed this scheme in order to defraud "Medicaid and other government health care benefit programs and private insurers." [Id. at 4.]

# II

Motions in limine are utilized to enable more expedient trial practice by resolving particular evidentiary disputes. *See Bishop v. Children's Center for Developmental Enrichment*, 2011 WL 6752421, at * I (S.D. Ohio Dec. 23, 2011) (citations omitted). Many disputes are not capable of being resolved at this stage, however, because it is difficult to predict all the potential circumstances under which evidence might become valuable and admissible. *See Luce v. United States*, 469 U.S. 38, 41 (1984). Evidence is only excluded at this stage if it is obviously inadmissible on any potential ground. *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Unless that high standard is met, admissibility questions should be postponed until trial, *id.,* meaning that denial of a motion in limine does not preclude a party from reasserting that motion during trial. *Luce*, 469 U.S. at 41.

Dr. Chalhoub maintains some of the noticed evidence is inadmissible under Federal Rule of Evidence 404(b). Pursuant to that rule, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Nevertheless, the rule goes on to note in relevant part that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Sixth Circuit has adopted a three-part test that courts use to decide whether to admit or exclude evidence under Rule 404(b):

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potentially prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (emphasis in original); *see also United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012).

Notably, Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed. R. Evid. 404 advisory committee's note. Put another way, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). Ultimately, this Court has broad discretion to determine whether bad acts evidence is admissible. *See, e.g., United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).

### A

As a preliminary matter, not all of these matters can be handled at this stage. "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Some motions to exclude evidence have been mooted and some are not fully briefed. Also, this Court cannot rule on hypothetical situations, which both parties rely on significantly in their motions.

First, Chalhoub asks this Court to exclude "rumors about excessive procedures." [R. 98-1 at 8.] Rumors are certainly inadmissible pursuant to the rule against hearsay. Fed. R. Evid. 802. However, in their response, the Government predictably argues that they are not seeking to admit any rumors. This Court can't rule on hypothetical situations and declines to issue a ruling here.

Second, Chalhoub seeks to exclude testimony regarding an indicia of fraud. [R. 98-1 at 14.] The United States responded that it "does not intend to call a law enforcement witness for this purpose, so this issue is moot." [R. 104 at 13.] Accordingly, this issue is denied as moot.

Third, Dr. Chalhoub objects to categorizing the Executive Health Resources (EHR) Review as a peer review. [R. 98-1 at 14.] Dr. Chalhoub doesn't seem to argue that the review is inadmissible, only that it shouldn't be categorized as a peer review. [*See id.*] The Government responded that it doesn't intend to present the review as a "peer review" or a "professional review." [R. 104 at 14.] To the extent this solves the Defendant's concerns, this issue is denied as moot.

Fourth, Chalhoub objects to cardiac nurse Betsy Reynolds providing expert testimony during the trial. [R. 98-1 at 17.] The United States responded that it "does not plan to elicit an opinion from Nurse Reynolds as the medical necessity of Chalhoub's procedures." [R. 104 at 15.] This issue is denied as moot.

Fifth, the Government seeks to exclude evidence of Dr. Chalhoub's family background. [R. 99 at 4–5.] The Defendant objects and requests this Court consider this objection in the course of trial, and this Court agrees. [R. 105 at 5.] While some potential family evidence could be irrelevant, the United States is merely speculating on what Dr. Chalhoub *could* introduce at trial. Without knowledge of specific evidence that would indicate it is clearly inadmissible for any purpose, the Court should defer those rulings until trial and determine those questions in the proper context. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Deer & Co. v. FIMCO, Inc.*, 260 F.Supp.3d 830, 834 (W.D. Ky. 2017); *Gresh v. Waste Services of America, Inc.*, 738 F.Supp.2d 702, 706 (E.D. Ky. 2010). Accordingly, this issue is denied as moot.

Sixth, the Defendant objects to the United States's notice to introduce evidence that Dr. Chalhoub pressured other doctors to perform medical tests. [R. 107 at 3.] Again, parties do not detail the evidence they seek to admit and disagree as to the scope of the type of pressure Dr. Chalhoub used. Absent the surrounding evidence presented at trial, this Court declines to rule on this issue prior to trial and denies it as moot.

**B**

The Defendant seeks to exclude evidence of Dr. Chalhoub's lavish lifestyle. [R. 98-1 at 4.] In *United States v. Jackson-Randolph*, the Sixth Circuit noted a three-part test for determining whether the probative value of lavish lifestyle evidence outweighs the prejudicial effect of that evidence. 282 F.3d 369, 378 (6th Cir. 2002). In that case, the court found that unfair prejudice does not outweigh the probative value of lavish lifestyle evidence where "(1) there is other credible evidence, direct, or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates to the period of the alleged illegal activity." *Id.* Despite setting forth these factors, the Sixth Circuit also recommended a case-by-case analysis, emphasizing the notion that "each case necessarily turns on its own facts." *Id.* (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 (1940)). "The problem with a general rule of permitting evidence of an affluent lifestyle to show 'motive' for committing a crime is that it ignores the real possibility that the extreme or extravagant wealth or spending was made possible by legitimate means," and Courts are instructed to determine "whether the relevance of motive is outweighed by unfair prejudice as contemplated by Fed.R.Evid. 403 and the due process clause of the Fifth Amendment." *Jackson-Randolph*, 282 F.3d at 378.

This evidence is best evaluated in the course of trial, as the analysis is case-by-case. The Government has indicated that they do not "intend to highlight or draw attention to specific instances of 'lavish lifestyle,' such as Chalhoub's tastes in clothing and expensive cars, unless Chalhoub somehow opens the door to such testimony," but instead will focus on how changes in Chalhoub's spending tracked with his changes in productivity and, thus his income. [R. 104 at 3.] The United States asserts that Chalhoub's income and expenses increased as the number of pacemakers he installed increased, which proves the first and third elements from *Jackson-Randolph*, that the evidence of lavish lifestyle is directly connected to the time period of the alleged illegal activity. [*See id.*]

As to the second element, "the United States concedes that it cannot prove that all of Chalhoub's income during the relevant timeframe was illegitimate." [*See id.*] The analysis therefore turns on whether this evidence of expenses tracking with income, tracking with pacemaker installation is more probative than prejudicial. At this point, the Court finds that the evidence as specifically indicated by the Government is more probative than prejudicial, as it necessarily shows the jury a requisite intent, or motive, to commit the crimes alleged by the Government. That the illegal activity caused financial gains for Chalhoub is highly relevant and, as long as the Government stays within the bounds explained in their Response, is less prejudicial than probative.

This Court is mindful that "trial courts should ever be alert to prevent" unnecessary references to class, and does not blanketly admit all evidence of Chalhoub's lifestyle expenditures. *Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002). However, as the Government has cabined the evidence they intend to admit, it is admissible. More specific findings will be held in the course of trial.

**C**

Chalhoub next objects to the Government's introduction of evidence related to a kickback he received for using certain products from a company called Bytronics. [R. 98-1 at 6.] Dr. Patil, a witness for the Government, stated that Dr. Chalhoub was taken on an exotic hunting trip in Montana by Bytronics. [*Id.*] First, the United States "is not certain it will present such evidence," but this Court agrees with the Government that it should not be categorically excluded. [R. 104 at 6.]

"[E]vidence used to demonstrate motive for fraud is relevant." *United States v. Carter*, 483 F. App'x 70, 75 (6th Cir. 2012). Though Defendant argues this evidence is prejudicial, "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Amr*, 132 F. App'x 632, 634–35 (6th Cir. 2005) (quoting *United States v. Schrock,* 855 F.2d 327, 333 (6th Cir.1988)). This evidence is certainly prejudicial but seems to support a finding of fraud. If Dr. Chalhoub was installing pacemakers in order to obtain benefits, like an exotic hunting trip, then that supports the Government's theory that these installations were fraudulent. However, this is not a final ruling by this Court and this matter will be taken up in the course of trial.

**D**

The Government seeks to exclude or, in the alternative, limit the scope of Dr. Stavens's testimony, who seeks to testify as an expert for Dr. Chalhoub. [R. 100 at 2.] The Government bases much of their case on a report from Dr. Spragg, a cardiologist at Johns Hopkins University. [R. 110 at 1.] Dr. Stavens is a cardiologist at Cardiovascular Specialists, P.S.C, in Louisville, Kentucky, who based his report on seventeen (17) patients Dr. Chalhoub treated from 2000 to

2008. The Government alleges only three of those patients overlap with the Government's report from Dr. Spragg. [R. 110 at 2.]

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. From Rule 702 comes a two part test for admitting expert testimony. First, is the expert qualified and the testimony reliable? And, second, is the evidence relevant and helpful to the trier of fact? *See, e.g., United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997).

The seminal case applying the first prong of the test is *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In that decision, the Supreme Court explained that a district court's gatekeeping responsibility is implicit in Rule 702, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Further, the Supreme Court listed several specific factors to help determine the reliability of expert testimony based on scientific knowledge. *See id.* at 590, n. 8. These factors include whether a theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether there is a high known or potential error rate; whether there are certain operation standards that should have been or were followed; and whether the theory or technique is generally accepted within the scientific community. *Id.* at 592-94. Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court determined that the gatekeeping obligation and subsequent factors established in *Daubert* apply with equal force to non-scientific experts. However, those factors are not definitive and district courts "must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

As for the second prong of the test, district courts "must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). The Supreme Court in *Daubert* referred to this prong as the "fit" requirement. *See id.*; *Daubert*, 509 U.S. at 591-93. Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," courts must consider whether a particular expert's testimony will truly assist the trier of fact to understand the evidence in the case at hand. *Daubert*, 509 U.S. at 591. Notably, the Court's gatekeeping role under the case law "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). Whether or not to admit expert testimony is a matter over which the district court ultimately enjoys broad discretion. *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010).

The Government does not argue, and this Court finds no reason in the record, that Dr. Stavens should be disqualified based on a lack of knowledge of the field. The Court reserves that determination for trial. Rather, the Government focuses its argument on whether "the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000).

There is a distinction here in Dr. Chalhoub's case that is not present in the cases used by the United States. The United States relies on *United States v. Dobbs,* 506 F.2d 445, 447 (5th Cir.1975), which is cited by the Sixth Circuit, holding in part that "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." However, the Sixth Circuit has clarified that "[e]vidence of noncriminal activities 'would only be relevant if the

indictment charged the defendants with ceaseless criminal conduct.'" *United States v. Daulton*, 266 F. App'x 381, 386 (6th Cir. 2008) (quoting *United States v. Scarpa,* 913 F.2d 993, 1011 (2d Cir.1990).); *see also United States v. Garvin*, 565 F.2d 519, 521 (8th Cir. 1977) ("[H]onesty in some transactions is usually irrelevant to the issue of fraud in a different transaction. However, the issue here is the existence of a criminal purpose to defraud and a scheme to defraud . . . .").

Here, the Government has charged Dr. Chalhoub not with individual counts of health care fraud and not with detailed allegations of fraudulently installed pacemakers, but instead generally charged, "[f]rom on or about . . . March 2007, through at least on or about July 13, 2011, Chalhoub did devise and intend to devise a scheme and artifice to defraud and obtain money from federal health care benefit programs. . ." [R. 1 at 3.] Chalhoub is defending against the allegation that he constructed a scheme or artifice to defraud. Presenting evidence that he was not constructing a scheme or artifice to defraud during the same time period alleged in the indictment is relevant. Rather than excluding this evidence, instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596

The Government makes a valid objection that the report is irrelevant because it covers a time period of 2000 to 2008 and covers only three patients listed in Dr. Spragg's report, and this Court agrees in part. The Defendant is permitted to present evidence from Dr. Stavens's report as it pertains to the relevant time period in the indictment to present a defense against the scheme and artifice to defraud. Further, this Court finds that the patients that overlap with Dr. Spragg's report are also admissible as they are "inextricably intertwined" with the Government's intended proof at trial. *United States v. Daulton*, 266 F. App'x 381, 384 (6th Cir. 2008). As for the

patients that overlap with Dr. Spragg's report, even if Dr. Stavens did not have records of the time period in which the alleged unnecessary pacemakers were installed, he can still opine on Dr. Chalhoub's standard of care and background caring for specific patients that will be necessary to form their case that the pacemakers installed were not unnecessary.

Further, the Government objects to the admission of "the Impact audit," which "reviewed a sampling of Cardiovascular Specialist's charts at some unspecified point between 2000 and 2008, and did not find any deviation from the standard of care in services rendered by Chalhoub." [R. 99 at 6.] Notably, Dr. Chalhoub does not dispute that the audit itself should be excluded, but argues that "Dr. Stavens should be allowed to testify that he, on behalf of Cardiovascular Specialists, periodically retained an independent auditor to review medical records to ensure all doctors within the practice are meeting the standard of care." [R. 105 at 7.] This does not seem to be relevant or helpful to the trier of fact. *See, e.g., United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997). The Impact audit does not seem to have occurred during the indictment period and this Court cannot determine how it is relevant. This evidence is preliminarily excluded.

This Court does not make any findings as to the first element of *Daubert* admissibility, but only holds that some of Dr. Stavens's testimony is relevant and inextricably intertwined with the Government's case and will be admitted.

E

Similarly, using the same authority at *infra* § II.D, there are a number of other motions to exclude evidence that can be addressed. Dr. Chalhoub will be permitted to present evidence of other patients' care to combat the charge against him that he orchestrated a scheme or artifice to

defraud as long as these patients are the same patients that the Government intends to use in their case or were during the relevant indictment period. [*See* R. 99 at 2.]

The converse of this conclusion also has to be true. The Government may introduce other evidence relating to Dr. Chalhoub's scheme or artifice to defraud. [R. 98-1 at 7.] This information is inextricably intertwined with the conduct from the indictment and will only aid the jury in making its determination. This does not open the door for the Government or the Defendant to admit all types of evidence from the relevant time period. This Court only acknowledges that, as the Government has alleged a scheme or artifice to defraud, the proof allowed in will be somewhat broader than if the indictment charged individual counts.

### F

This Court declines to rule on whether the pacemaker installed in C.H. in 2001 is admissible, but will rule in the course of trial when more of the record can be developed. The Government argues "evidence relating to Chalhoub's treatment of C.H. is probative of his intent, preparation, plan, knowledge, and absence of mistake" pursuant to Fed. R. Evid. 404(b)(2). [R. 102 at 2.] Simply saying it is admissible pursuant to Rule 404(b) does not make it so and without more explanation, this Court declines to rule on how this pacemaker installation is related to the indicted conduct.

### III

The rulings in this order are preliminary and may change in the course of trial as evidence is admitted. "[T]he district court may change its ruling at trial for whatever reason it deems appropriate. . . . The rationale is that facts may have come to the district court's attention which it did not anticipate at the time of its initial ruling." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Accordingly, it is hereby ordered:

1. Dr. Chalhoub's Motion in Limine [R. 98] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the Court's explanation above;

2. The United States's Motion in Limine [R. 99] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the Court's explanation above;

3. The United States's Motion in Limine to Exclude the Testimony of Dr. Chris Stavens [R. 100] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the Court's explanation above;

4. The Defendant's Motion to Exclude Evidence [R. 107] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the Court's explanation above; and

5. The Government's Motion to Seal [R. 94] is **GRANTED**.

This the 23rd day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge