UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>ANIS CHALHOUB, M.D.,<br><br>Defendant. | Criminal No. 6:16-cr-00023-GFVT-HAI<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Following a lengthy healthcare fraud criminal trial, Dr. Chalhoub has filed a Motion for Acquittal [R. 150] and a Motion for New Trial [R. 152]. The Court **DENIES** both motions. This result is informed by new precedent decided by the Sixth Circuit in *United States v. Paulus*, 894 F.3d 267, 276 (6th Cir. 2018). Contrary to Dr. Chalhoub's arguments, falsity in the practice of medicine does exist and to hold otherwise would "be an insult to common sense." *Paulus*, 894 at 276.

# I

Dr. Chalhoub was charged in June 2016 with one count of health care fraud pursuant to 18 U.S.C. § 1347. [R. 1.] According to the indictment, from March 2007 until July 13, 2011, Chalhoub executed a scheme to defraud health care benefit programs. *See id.*

Over the course of the trial, the Government presented evidence seeking to prove that Chalhoub "implanted single chamber and dual chamber permanent pacemakers in patients without sufficient medical need or justification." [R. 1 at 3.] They called several cardiologists, who either reviewed the Government's files or treated Chalhoub's patients. [R. 161 at 2.] They

also called witnesses from Medicare, Medicaid, and several private insurers, who testified on medical necessity as "an absolute precondition to payment." [R. 161 at 3.] Further, twelve of Chalhoub's former patients testified about their experiences as Chalhoub's patients. [R. 161 at 4.] The jury found Dr. Chalhoub guilty of the one count indictment. [R. 134.]

Following the jury's verdict, the Defendant filed post-trial motions for a judgment of acquittal pursuant to Rule 29 and a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. After considering the Defendant's arguments and the evidence presented during trial, the Court upholds the jury's verdict and denies the requests for post-trial relief.

## II

### A

At the conclusion of the Government's case, the Defendant moved for acquittal and now, following the verdict, he has supplemented his motions in support of acquittal pursuant to Federal Rule of Criminal Procedure 29. [R. 150.] Rule 29 requires this Court to enter a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

When considering a Rule 29 motion based on an alleged insufficiency of the evidence, the Court may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute its judgment for that of the jury. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Instead, the Court views all of the evidence in the light most favorable to the Government, and then it considers whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *Callahan*, 801

F.3d at 616 (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)). Because the Defendant has failed to sustain this burden, the Rule 29 motion is properly denied.

A review of the trial evidence demonstrates that a rational trier of fact could conclude the Defendant was guilty beyond a reasonable doubt of the single healthcare fraud conviction. In order to convict Dr. Chalhoub, the jury was required to find that he "knowingly devised a scheme or artifice to defraud a health-care benefit program in connection with delivery of or payment for health-care benefits, that [he] executed the same, and that [he] did so with an intent to defraud." *United States v. Medlock*, 792 F.3d 700, 711 (6th Cir. 2015). "The government need not offer direct evidence; instead, 'a jury may consider circumstantial evidence and infer intent from evidence of efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits.'" *Paulus*, 894 at 277 (quoting *Persaud*, 866 F.3d at 380). The circumstantial evidence presented by the United States sufficiently allowed the jury to reach this conclusion.

The Defendant brings a variety of arguments, most under the theory that because implanting pacemakers "is an area of medical judgment fraught with diagnostic ambiguity," Dr. Chalhoub could not have committed fraud. [R. 150-1 at 17.] These arguments can be addressed together, as the underlying premise, that there was no falsity, has been recently addressed by the Sixth Circuit.

The Defendant argues that the Government did not provide separate evidence to prove falsity. In fact, Chalhoub suggests, "[t]he records may or may not have documented the medical reasoning supporting the pacemaker procedures to the satisfaction of the government's witnesses, but they weren't false." [R. 150-1 at 20.] Essentially, he argues that, because his medical documentation was so "thin", there is not a way for a jury to determine if there was

3

falsity. [R. 150-1 at 21.] Dr. Chalhoub further argues that "criminalizing" "medical judgment" is an "overbroad application of the health care fraud statutes" [R. 150-1 at 26]; that the "plain language" of the healthcare fraud statute does not support the conviction of Dr. Chalhoub [R. 150-1 at 30]; this application of Section 1347 is not consistent with the intent of Congress [R. 150-1 at 34]; the application of Section 1347 readjusts the balance of federal and state powers [R. 150-1 at 35]; the rule of lenity requires rejecting an expansive application of Section 1347 [R. 150-1 at 37]; and the application of Section 1347 violates Dr. Chalhoub's due process rights [R. 150-1 at 38.]

Many of the above arguments made by the Defendant were based on the reasoning in *United States v. Paulus*, 2017 U.S. Dist. LEXIS 32097 (E.D. Ky. Mar. 7, 2017). Dr. Paulus was convicted by a jury for healthcare fraud. Subsequently, the District Court judge granted a motion of acquittal. Since Dr. Chalhoub's initial filings for a new trial and for judgement of acquittal, the Sixth Circuit reversed the District Court judge. *Paulus*, 894 at 276. The Sixth Circuit confirmed in *Paulus* that upholding a healthcare fraud conviction is appropriate in cases of "diagnostic ambiguity." *Id.*

Though a simple mistake would not result in a fraud conviction, that is not the government's case here. In *Paulus*, the Government proved that, "Paulus repeatedly and systematically saw one thing on the angiogram and consciously wrote down another, and then used that misinformation to perform and bill unnecessary procedures. The difficulty of interpreting angiograms has no bearing on the capacity of these statements to be false." *Paulus*, 894 at 276. Similarly, here, the Government's case is that Dr. Chalhoub saw one thing in his patients but consciously decided to implant a pacemaker when he *knew* it was not necessary. The difficulty of correlating heart rates and Holter monitors has no bearing on the fact that Dr.

Chalhoub committed fraud. In fact, the jury *could* have concluded that Dr. Chalhoub "was acting in good faith and that the government's experts were 'unfairly second-guessing his reasonable decisions' and making incorrect assumptions about the medical science." *Paulus*, 894 at 276 (quoting *Persaud*, 866 F.3d at 384).

The Government provided evidence that there are guidelines according to the American College of Cardiology (ACC) as to when pacemakers should be installed. Dr. John Gurley testified that the ACC Guidelines are "good standards; they're guideposts. We try to practice evidence-based medicine. We try to adhere by the guidelines when we teach our trainees, our Fellows." [R. 144 at 33; *see also* Testimony of Doctor Aaron Hesselson, R. 142 at 6; Testimony of Dr. Gery Tomassoni, R. 142 at 7; Testimony of Dr. Oluwole John Abe, R. 140 at 17.] The Government also offered evidence that additional guidelines existed outside of the ACC guidelines. They admitted the Centers for Medicare and Medicaid Services issued National Coverage Determination (NCD) 20.8 for the insertion of pacemakers. Gov. Ex. 1. Dr. Berman explained that the NCD explains "conditions where a pacemaker would be covered and payable in the Medicare population." [R. 139 at 139.]

Dr. Chalhoub next argues that no jury could find that he knew that his conduct was unlawful. [R. 150-1 at 21.] However, the Government provided adequate evidence that: (1) medical guidelines exist as to when pacemakers should be installed; (2) Dr. Chalhoub knew of those guidelines; and (3) Dr. Chalhoub did not follow those guidelines. Falsity does exist in this situation, contrary to the Defendant's arguments. Quoting *Paulus*, "[i]ndeed, it would be an insult to common sense and the practice of medicine to say that [Chalhoub] was not measuring facts (or attempting to do so) when he [installed the pacemakers] at issue here." *Paulus*, 894 at

5

276. Accordingly, the above-referenced arguments are denied as overturned in *United States v. Paulus*, 894 F.3d 267, 276 (6th Cir. 2018).

The Defendant argues next that not *all* the pacemaker evidence presented by the Government demonstrated fraud. He argued that, "[t]he proof established that the pacemakers were appropriate in at least 13 of the 31 procedures. That is to say, the government could not establish a lack of medical necessity for at least 13 of the selected 31 procedures." [R. 150-1 at 15.] However, the Court does not evaluate Rule 29 motions in this way. The Defendant would have the Court find that, even though there may have been a small number of procedures that were at issue (if not fraudulent), the vast majority were not, and therefore, the small percentage "counters any notions of an intent to defraud." [R. 150-1 at 15.]

Turning to the substantive healthcare fraud count, the Government presented adequate proof that Dr. Chalhoub "knowingly devised a scheme or artifice to defraud a health-care benefit program in connection with delivery of or payment for health-care benefits, that [he] executed the same, and that [he] did so with an intent to defraud." *United States v. Medlock*, 792 F.3d 700, 711 (6th Cir. 2015). However, this Court finds the Government presented sufficient evidence of Chalhoub's intent and motive to commit healthcare fraud.

The Government presented evidence that Dr. Chalhoub benefited financially from the unnecessary procedures. [*See.* Gov. Ex. 18b; R. 147 at 115.] Dr. Chalhoub argues that "very little of [his] income was derived from implanting pacemakers." [R. 152-1 at 22.] Chalhoub noted that his "average annual reimbursement from pacemaker procedures was roughly $17,720 during that time period. The government's evidence of Dr. Chalhoub's after tax income during a similar period (2008 to 2013) ranged from a low of $528,586 to a high of $825,412 and averaged $622,103." [R. 152-1 at 22.] But Dr. Chalhoub provided no authority, and this Court knows of

6

none, that requires criminal activity to be exceptionally lucrative in order to gain a conviction. The jury may or may not have used this as evidence of Dr. Chalhoub's motive to commit fraud, but to use this evidence was not unreasonable and could be circumstantial evidence of his motive to commit a crime.

The Government also contended at trial that, due to Dr. Chalhoub's fraudulent productivity, he was offered more for his practice when it was bought by St. Joseph. [*See* Transcript of Carmel Jones, R. 145 at 38 ("Q. I think you told us a moment ago, does that productivity level above that 90th percentile, was that part of your consideration for whether Dr. Chalhoub was an attractive candidate? A. Yes.").] The jury could have inferred Chalhoub's criminal intent from this as well.

The Government provided evidence of multiple patients who testified that they were pressured by Dr. Chalhoub to let him install a pacemaker. [*See* R. 139 at 4; R. 139 at 93.] Patient B.C. testified that Dr. Chalhoub told her she would die, either while "driving and pass out and wreck and get killed, or . . . go to sleep and not wake up." [Testimony of B.C., R. 139 at 93.] Patient H.C. testified that Dr. Chalhoub told him his pacemaker was not intended to make him feel better, but to "save [his] life." [Transcript of H.C., R. 143 at 233.] A reasonable jury could have had suspicions as to why a doctor would pressure his patients to have procedures if there was no financial motive.

The Government also proved that Dr. Chalhoub made false statements, or misrepresentations, in the medical record. Dr. Jones recorded that a patient, K.W., had 10% blockage when Dr. Chalhoub had recorded K.W. had 50–60% blockage. Joint Exhibit 220. Further, the Government showed several instances where Dr. Chalhoub recorded "pauses" on a Holter Monitor that other experts did not see. [Transcript of Dr. Spragg, R. 141 at 61.]

7

Combining all this direct and circumstantial evidence, a reasonable jury could have assumed that Dr. Chalhoub was committing healthcare fraud by installing unnecessary pacemakers to benefit financially, either directly from the procedure or through St. Joseph acquiring his practice.

Chalhoub also makes an argument that the charges brought against him by the Government violated the statute of limitations. [R. 150-1 at 24.] He brings this same argument in his Rule 33 Motion for a New Trial. [R. 152-1 at 32.]

Parties agree that indictments brought under 18 U.S.C. § 1347 are subject to a five-year statute of limitations pursuant to 18 U.S.C. § 3282(a). [*See* R. 150-1 at 25; R. 161 at 31.] Parties somewhat conditionally also agree that healthcare fraud under § 1347 can be considered a "continuing offense." *See United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015) ("A scheme proscribed by Section 1347 may properly be charged as a continuing offense.") The indictment was returned June 23, 2016. [R. 1.] Chalhoub argues that, even though the healthcare fraud can be a continuing offense, the Government would still need to find a claim that was paid between June 23, 2011 (five years before the indictment), and July 13, 2011.[1]

However, the Government *did* put forth evidence of a scheme that occurred during this time period. For one example, the Government identified patient B.S., whom Dr. Chalhoub implanted a pacemaker in on July 13, 2011. *See* Gov. Ex. 19. The Government presented testimony from Dr. Spragg and Dr. Solow, who believed that B.S.'s pacemaker installation was unnecessary. [*See* R. 140 at 238; R. 138 at 49.] The Government provided proof that the claims

---

[1] The Defendant relies on dicta in a Report and Recommendation adopted in *United States v. Mermelstein*, 487 F. Supp. 2d 242, 255 (E.D.N.Y. 2007), for his statute of limitations argument. This is neither authoritative nor persuasive and, regardless, does not hold what the Defendant claims it does, but rather *suggests* a remedy during jury instructions: "[f]inally, any concerns that the defendant may have about being convicted solely on the basis of acts that took place before the effective date of the statute or outside the period of limitations *may* be avoided by submitting special interrogatories to the jury."

8

related to B.S.'s care and pacemaker installation were submitted and paid during the necessary limitations period. [*See* Government Ex. 14, 16(r), 17(m), 18a, 19.] Because the Government did provide evidence that a fraudulently paid claim occurred during the relevant time period, the Defendant's statute of limitations claim is denied.

## B

The Defendants alternatively request a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33 allows the Court to vacate a judgment entered against a Defendant and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are granted "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *See United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citation omitted). While the Court construes all evidence in the light most favorable to the Government when analyzing a Rule 29 motion, the Court is allowed to "act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence" when resolving a Rule 33 motion. *Id.*; *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).

Although Rule 33 allows the Court to vacate a jury's verdict and grant a new trial "if the interest of justice so requires," that phrase is not defined in the Federal Rules of Criminal Procedure or elsewhere in the law. *See United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). Nevertheless, the Sixth Circuit has articulated "several recurring themes" that emerge from the body of Rule 33 case law that help guide the Court in reaching its conclusion. Rule 33 may be used to grant a new trial if the jury's verdict is against the manifest weight of the evidence, or if a substantial legal error has occurred. *Id.* "[L]ess clear is whether a district court may grant Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but

9

where the district court nonetheless believes that 'the interest of justice' requires a new trial." *Id.* at 374. The Court finds that the jury's verdict was not against the manifest weight of evidence, no substantial legal error occurred, and a new trial is not required in the interest of justice.

**1**

Chalhoub makes three arguments that the verdict was against the manifest weight of evidence: "(i) the evidence did not demonstrate any criminal intent; (ii) the evidence did not demonstrate any false statement or representation; and (iii) the government relied on misleading evidence not probative of any intent." [R. 152-1 at 9.]

The first two arguments have already been addressed in the Rule 29 portion of this opinion, namely, that "[t]he evidence did not demonstrate any criminal intent" [R. 152-1 at 9] and "[t]he evidence did not demonstrate any false representation or statement" [R. 152-1 at 14]. As explained, infra § II.A.1.a, this argument has already been denied. Even under the stricter Rule 33 standard, viewing the evidence as the thirteenth juror, the underlying legal arguments have been explicitly rejected in *United States v. Paulus*, 894 F.3d 267, 276 (6th Cir. 2018) and this Court rejects them here as well.

Chalhoub next argues that "[t]he jury could not reach a verdict based on improper evidentiary inferences not probative of intent." [R. 152-1 at 17.] First, he states that Dr. Hesselson's testimony was improper. Dr. Hesselson testified that he turned down or off approximately twenty (20) pacemakers, who were all patients of Dr. Chalhoub. [Testimony of Dr. Aaron Hesselson, R. 142 at 59-60.] Dr. Chalhoub objects to this testimony because it was imprecise and argues that Dr. Hesselson should have identified the precise patients at issue. Dr. Chalhoub makes this argument several times and it will be addressed under the more stringent Rule 33 standard. [*See also* R. 150-1 at 12; R.152-1 at 31.]

Chalhoub maintains that Dr. Hesselson's testimony concerning the "approximate 20" pacemakers was inadmissible pursuant to Federal Rule of Evidence 404(b) and, if not, inadmissible pursuant to Federal Rule of Evidence 403. Pursuant to 404(b), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Nevertheless, the rule goes on to note in relevant part that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Sixth Circuit has adopted a three-part test that courts use to decide whether Courts should admit or exclude evidence under Rule 404(b):

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potentially prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (emphases removed); *see also United States v. Yu Qin*, 688 F.3d 257, 262 (6th Cir. 2012).

Rule 403 is captured by the third step of 404(b) analysis established by the Sixth Circuit and holds that, even if the evidence is found relevant pursuant to 404(b), the Court should exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Given the potential for confusion, misuse, and unfair prejudice from other act evidence, it is preferable that the district court make an explicit finding regarding the Rule 403 balancing." *United States v. Hardy*, 228 F.3d 745, 751 (6th Cir. 2000).

Notably, Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed. R. Evid. 404 advisory committee's note. Put another way, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). Ultimately, this Court has broad discretion to determine whether bad acts evidence is admissible. *See, e.g., United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).

During Dr. Aaron Hesselson's testimony, he referenced turning down "approximately 20" pacemakers but that he couldn't remember specific numbers or names. The specific line of questioning at issue follows:

> Q. Have you also treated other patients of Dr. Chalhoub who received pacemakers?
> A. Yes.
> Q. Now, were you seeing these other patients in approximately the same time period, which I think we've said is 2013, 2014 forward?
> A. Or even a little earlier than that sometimes, yes.
> Q. Do you recall seeing patients other than the ones we've talked about who had received their pacemakers from 2007 to 2011, that time period in there?
> A. Yes.
> Q. Do you recall seeing other patients, other than the ones that we've identified, from approximately that time period who you either had to turn down or turn off the pacemakers?
> A. Yes.
> Q. Do you recall approximately how many?
> A. Approximately 20.

[Testimony of Dr. Aaron Hesselson, R. 142 at 59–60.] During the course of trial, the Defendant objected prior to this line of questioning and the Court held that the Government must prove the "approximately 20" pacemakers occurred during the indictment period, which they did. [*See* R. 142 at 59.] Because Dr. Hesselson identified the time period, during the dates charged in the indictment, and the subject of the testimony, turning down unnecessary pacemakers, is the exact

12

subject matter of the charges brought against Dr. Chalhoub, it is intrinsically related to the case and will not be excluded pursuant to 404(b).

Further, this Court has already held, and holds again, that the evidence is prejudicial, but a 403 analysis does not end there. Nearly all admissible evidence could be categorized as prejudicial, but the evidence here is more probative than prejudicial, as it demonstrates that Dr. Chalhoub acted in accordance with the indictment returned against him. Dr. Chalhoub argues that Dr. Hesselson should have been more precise in his testimony, but he offered no cases supporting that proposition. In contrast, the Government listed a number of cases where witnesses testified to approximate dates or amounts. *See, e.g., Evans v. United States*, 284 F. App'x 304, 306 (6th Cir. 2008); *United States v. Currier*, 473 F. App'x 469, 472; *United States v. Akins*, 237 F. App'x 61, 64 (6th Cir. 2007); *United States v. Henley*, 360 F.3d 509, 518 (6th Cir. 2004). This Court agrees with the Government that the remedy to imprecise testimony here is not exclusion, but the Confrontation Clause. Dr. Chalhoub was able to cross examine Dr. Hesselson adequately, remedying whatever issues with Dr. Hesselson's impreciseness that existed.

Further, Chalhoub objects to the Government's reference to "approximately 50" unnecessary pacemakers in their closing argument. [R. 152-1 at 18.] The Government countered with a detailed list of the pacemaker procedures they were basing the "approximately 50" comment on: "(1) the 27 unnecessary procedures from Dr. Spragg's review; (2) patient B.C.; and (3) the '[a]pproximately 20' pacemakers Dr. Hesselson recalled turning down or off, R. 142: Hesselson Tr. at 59, for a total of 48 procedures (e.g., 'approximately 50')." [R. 161 at 39.] As the Government presented evidence of turning down or off approximately fifty (50) pacemakers, this argument is also denied.

13

**2**

The Defendant identified a variety of alleged trial errors in support of his motion for a new trial. Upon review, the Court finds there were no errors and denies the Defendant's requested relief.

Chalhoub argues again, "Chief among the errors was the decision to allow the government to offer testimony from Dr. Aaron Hesselson" regarding the "approximately 20" pacemakers. [R. 152-1 at 3, 18.] This argument was addressed infra § II.B.1.b and this Court holds it was not error to allow this testimony, much less substantial error.

Dr. Chalhoub contends that there was improper and "prejudicial 'kickback' evidence" introduced at trial. [R. 152-1 at 20.] The Court has already ruled on this matter twice, once preliminarily in response to a Motion in Limine and, second, during the course of trial. [*See* R. 109; R. 147 at 21.] Essentially, the Government received information that Dr. Chalhoub was taken on an exotic hunting trip by a Mr. Robert Goodnight, a pacemaker representative and sought to introduce this information during trial. [*see* R. 98-1 at 6.]

As the Court previously held, "evidence used to demonstrate motive for fraud is relevant." *United States v. Carter*, 483 F. App'x 70, 75 (6th Cir. 2012). Though Defendant argues this evidence is prejudicial, "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Amr*, 132 F. App'x 632, 634–35 (6th Cir. 2005) (quoting United States v. Schrock, 855 F.2d 327, 333 (6th Cir.1988)). The Government elicited a small amount of information from Dr. Chalhoub, that he had taken a hunting trip with a Mr. Goodnight and another trip to Cincinnati. [*See* R. 147 at 123.]

Dr. Chalhoub relies on *United States v. Pintar*, 630 F.2d 1270, 1283 (8th Cir. 1980), which can be distinguished from his case. In *Pintar*, "the defendants assert[ed] that four distinct incidents unfairly implied that they were engaged in a scheme of taking kickbacks." *Id.* Further, the extent of the Government's line of questioning, "left no doubt that the government was attempting to infuse into the trial an extensive kickback scheme." *United States v. Pintar*, 630 F.2d 1270, 1287 (8th Cir. 1980). The testimony elicited from the Government in this case is far narrower. The Government asked merely a few questions and did not press further when Dr. Chalhoub explained he didn't remember much about the trip to Cincinnati. [*See* R. 147 at 123.] The Court views this evidence as indicative of possible fraud. The Government sought permission of the Court to inquire on Dr. Chalhoub's trips and asked limited questions. There was no inappropriately prejudicial kickback evidence introduced that requires taking the verdict from the jury.

Chalhoub next challenges "[t]he improper evidence of [his] income and the prejudicial RVU-related inferences." [R. 152-1 at 22.] This was addressed infra at § II.A.1.c. Looking at the evidence as the "thirteenth juror" does not change the analysis there, as even a small financial gain could incentivize criminal behavior.

Additionally, Dr. Chalhoub argues that the Government sought to mislead the jury by implying that "Dr. Chalhoub's compensation was unique among the St. Joseph-London cardiologist in being based on productivity-based RVUs." [R. 152-1 at 23.] Dr. Chalhoub quotes a number of passages from the transcript [*see id.*] but none show the Government attempting to imply Dr. Chalhoub's compensation was unique. This argument is denied.

**3**

Th Defendant alleges he should be granted a new trial because of a number of substantial legal errors. [R. 152-1 at 23.] Several of his arguments have already been addressed in other sections of this opinion, and the analysis provided in those sections negates the need for analysis again. The Court has already considered the following arguments and dismissed them: Dr. Hesselson's testimony about "approximately 20" pacemakers; and that "[i]t was a substantial error not to require a jury finding on the falsity of a claim paid within the period of limitations." [R. 152-1 at 32.]

First, he argues "[i]t was a substantial error not to give a unanimity of theory instruction." [R. 152-1 at 33.] A unanimity instruction should be given if: "1) a count is extremely complex, 2) there is a variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." *United States v. Algee*, 599 F.3d 506, 514 (6th Cir. 2010). As to the first element, the count was not extremely complex, as Dr. Chalhoub was indicted on a single count of healthcare fraud. [*See* R. 1.] Second, the Defendant identified no variance between the indictment and the proof at trial and the Court has not identified any variance. Third, Chalhoub argues there was a tangible risk of jury confusion. He quotes *Schad v. Arizona*, 501 U.S. 624, 651 (1991) (Scalia, J, concurring), "[w]e would not permit, for example, an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the "moral equivalence" of those two acts." That is not the fact pattern we have here. The Government indicted Chalhoub on a single count scheme to defraud healthcare. Here, "only one offense is charged—that [Chalhoub] designed a scheme to obtain money . . . through fraudulent conduct consisting of false pretenses, representations, or promises." *United States v. Moore*, 129 F.3d 873, 877 (6th Cir. 1997). There is no requirement under the healthcare fraud statute or otherwise

that the jury should have agreed to anything more than that. No unanimity instruction was necessary.

Next, Chalhoub contends, "It was a substantial error not to give more particularized instructions concerning a physician's medical judgment." [R. 152-1 at 34.] A district court will only be reversed for failing to deliver a specifically request instruction when that instruction is: "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Mack*, 159 F.3d 208, 218 (6th Cir. 1998) (internal quotations omitted). Chalhoub made two jury instruction requests that were denied.[2]

First, though the Government argues the proposed jury instructions are not a correct statement of the law, and that may be accurate, the more compelling reason for denying Chalhoub's proposed jury instructions was that the issues were "substantially covered by the charge actually delivered to the jury." *United States v. Mack*, 159 F.3d 208, 218 (6th Cir. 1998). The Court included criminal jury pattern language focused on the fact that this was a criminal trial, not a civil trial, and explaining the burden of proof in a criminal matter. [R. 136 at 3.] Further, this Court gave the good faith defense pattern jury instruction, which covers the first

---

[2] Chalhoub's proposed instructions:

> The health care fraud statute is not intended to punish physicians for exercising medical judgment. It is also not intended to punish for questionable decision-making or even medical malpractice.

> It is also important to note that this is a criminal case and not a civil case. Whether the defendant violated Medicare/Medicaid/insurance rules is not the issue here as violations of these rules do not violate any criminal law. Likewise, whether those agencies ultimately would pay a claim or seek reimbursement for a claim is not the issue in this case. The issue is whether the defendant knowingly and willfully defrauded these agencies.

[R. 152-1 at 35.]

17

instruction Chalhoub requested. [R. 136 at 19.] Using the language Chalhoub provided would be simply repeating what the Court had already said in other pattern instructions, which have been vetted by the Sixth Circuit. Accordingly, it was not substantial error to deny Chalhoub's request.

Dr. Chalhoub objects to the "the prejudicial testimony regarding medical error in the treatment of patient R.B." [R. 152-1 at 37.] Dr. Chalhoub placed a pacemaker in R.B.in the "wrong side of patient R.B.'s heart." *Id*. This evidence was detailed through testimony by Dr. John Gurley and a video of the misplaced pacemaker lead. [R. 144 at 37–59.] The Government provided evidence that Chalhoub represented that the lead was "misplaced through a naturally-occurring 'septal defect' and [] that no corrective action was needed." [R. 161 at 48.] The Government represents that they introduced this evidence as probative of Chalhoub's state of mind, that he created a dangerous condition for patient R.B. and sought to cover his tracks by lying about the placement of the pacemaker lead. *Id*. The Defendant offers no authority why this testimony was so prejudicial as to warrant a new trial and the Government's explanation of how this testimony aided the jury in determining whether Dr. Chalhoub was guilty of healthcare fraud is reasonable. This argument is denied.

Finally, Dr. Chalhoub raises an argument that was already rejected by this Court in the course of trial [*see* R. 121], that the Sixth Circuit pattern instruction given after Dr. Abe's testimony warranted a mistrial. [R. 152-1 at 37.] Dr. Chalhoub has provided no additional authority nor a change of facts from the first time this Court decided that the pattern instruction was appropriate. As held previously, Dr. Abe did express opinions [*see* R. 116 at 58] and the Sixth Circuit has held explicitly that "it is an error to permit a witness to testify both as a fact witness and as an expert witness unless there is a cautionary jury instruction regarding the

witness's dual witness roles **or** a clear demarcation between the witness's fact testimony and expert opinion testimony." *United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010) (internal quotations and brackets omitted; emphasis added). "A failure to instruct can prejudice the defendant." *Id.* Because Abe expressed opinions, this Court was *required* to instruct, and it did.

In sum, Dr. Chalhoub argues that "[t]he cumulative effect of the trial errors warrant a new trial." [R. 152-1 at 40. This Court finds no trial errors and, accordingly, no cumulative effect of errors.

### III

Accordingly, for the foregoing reasons, the Court hereby **ORDERS** that the Defendant is not entitled to a judgment of acquittal, nor is a new trial warranted in this case. The jury verdict remains in force, and the Defendant's Rule 29 and Rule 33 motions [**R. 150; R. 152**] are **DENIED**.

This the 1st day of August, 2018.